## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| NORMA ESTEVEZ, | |
|        Plaintiff, | |
| | Civil Action File No. |
| v. | |
| | _____ |
| COBB COUNTY, GEORGIA, | |
|        Defendants. | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Norma Estevez ("Estevez" or "Plaintiff") files this Complaint against her former employer, Cobb County, Georgia ("County" or "Defendant") as follows:

### Introduction

1.

On February 19, 2024, Defendant notified Estevez that she was being terminated on February 22, 2024, for contacting a County employee about concerns of discriminatory conduct and discriminatory statements by her supervisor.

2.

Estevez previously filed complaints and concerns of national origin, race, and age discrimination with her supervisors and Human Resources (HR) in the months and weeks leading up her termination.

3.

After the County failed to perform any investigation, Estevez filed a charge of discrimination with the EEOC on February 7, 2024, just 12 days before she was notified she was being terminated.

4.

The County admits in its own termination letter that Estevez was being terminated for engaging in protected activity; thus, Estevez asserts claims of unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000 *et seq.* ("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").

5.

In addition to her retaliation claims, Estevez asserts claims of discrimination against her on the basis of her national origin and race in violation of Title VII, as well as her age in violation of the ADEA.

6.

Finally, Estevez was also a non-exempt employee under the Fair Labor Standards Act ("FLSA") during her employment.

7.

Estevez was routinely required to work more than 40 hours per week, especially during election periods, but the County did not pay Estevez overtime wages.

8.

Estevez is seeking all back-owed overtime wages during the 3-year period prior to the date of this action being filed.

**Statement of Claims, Parties, Jurisdiction, and Venue**

9.

As a county and political subdivision of the State of Georgia, Cobb County, Georgia, is subject to the jurisdiction of this Court and may be served with process through Chairwoman, Lisa Cupid, Cobb County, Georgia, 100 Cherokee Street, Marietta, Georgia 30090. Cobb County is also a covered employer under Title VII, the ADEA, and the FLSA.

10.

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this matter involves federal questions arising under Title VII, the ADEA, and the FLSA.

11.

Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because the acts, events, and occurrences giving rise to Estevez's claims took place in Cobb County, Georgia, which is within this judicial district and division.

## Administrative Remedies

12.

On February 7, 2024, Estevez timely filed a Charge of Discrimination alleging national origin and age discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC").

13.

After her termination on February 22, 2024, Estevez timely filed a new Charge of Discrimination with the EEOC on April 1, 2024, to address the retaliatory termination after her initial EEOC charge was filed on February 7, 2024.

14.

On August 1, 2024, Estevez filed an Amended Charge of Discrimination at the direction of the EEOC to also assert the retaliatory non-rehire actions taken against Estevez by the County.

15.

Estevez was issued Right to Sue letters for both Charges of Discrimination on September 30, 2024. This lawsuit is timely filed.

## **Factual Background Relevant to All Claims**

### *Initial Hire and Promotion*

16.

The County's Board of Elections and Registration ("Board of Elections") hired Estevez in May 2014 as a Fiscal Tech II.

17.

As a Fiscal Tech II, Estevez's job duties included monitoring department expenditures and balances, receiving and monitoring payments to the department, entering financial data into a computer, receiving and processing purchase requisitions, processing poll workers payroll, providing support to 150 plus people in the office, processing reports, handling inventory functions, and other related duties as monitored and approved by supervisors.

18.

The County promoted Estevez to a Fiscal Tech III in 2017.

*Performance Evaluations and Training*

19.

On her annual evaluations, Estevez received a "Meets Requirements" in 2014 and 2015, and from 2016 – 2022, Estevez received an "Exceeds Requirements" rating.

20.

Estevez's evaluations include positive comments affirming her strong work ethic, expertise, and value to the Board of Elections:

- "Norma does not need much, if any, direction to do her job. She is an expert in the tasks assigned to her."

-  "Always reliable prioritizing assignments to meet deadlines. Dependable with strong work ethic."

- "Very punctual. Never been late."

- "Norma has continuously proven her ability to analyze any situation, formulate a plan of action, execute, and succeed. For example; she took the initiative to approach her supervisor with a solution regarding

election worker payroll issues and approached the payroll department with her idea which has now been implemented."

- "She regularly volunteers to come in on her time off to help others when they have a large workload or tight deadline."

- "Norma holds this position to the highest regard. She gets along well with others but will not let herself be taken advantage of. She dresses appropriately and maintains a professional demeanor. She knows that Customer Service and Professionalism are a top priority as we are constantly in the public eye. In this respect, she is a wonderful representative of Cobb County and has proven herself over and over again to be an asset."

- "Norma demonstrated her ability to work well with others when a team was formed to process election payroll. She provided feedback, helped train, ensured adequate space was identified and available for the team to work, assisted others when needed."

- "Norma has consistently shown commitment to her job by coming in early, staying late, and working on her days off to ensure critical deadlines are met even if the tasks are not her responsibility."

- "Norma is a constructive communicator and is capable of articulating difficult issues effectively."

21.

In 2021, Estevez's supervisors advocated to get a special raise for Estevez due to her work ethic and value to the Board of Elections.

22.

In early 2023, Estevez's director at the time was seeking a reclassification of Estevez's position due to the additional responsibilities that Estevez had assumed after moving into a new office space.

## COUNT I – NATIONAL ORIGIN AND RACE DISCRIMINATION IN VIOLATION OF TITLE VII

23.

Plaintiff incorporates paragraph 1 – 22 by reference as if fully restated herein.

24.

Estevez is a Hispanic female who was born in Paraguay.

25.

Estevez immigrated to the United States in 1991.

26.

Estevez consistently received "Exceeds Expectations" since 2016 until she began reporting to a new supervisor at the end of July 2023.

*Change in Supervision*

27.

In 2022, the Board of Elections hired Karlie Brooks from another department in Cobb County.

28.

Brooks is a white female born in the United States.

29.

Brooks was pregnant at the time she was hired at the Board of Elections and was not assigned to supervise Estevez.

30.

After starting at the Board of Elections, Brooks told Estevez that she was groomed for a supervisor promotion at her prior department but told Estevez that it was given to another employee because she was black, while pointing to her skin.

31.

Estevez was shocked by the statement, but since she did not report to Brooks or know about her prior employment, Estevez tried to overlook the statement at the time since Brooks was taking maternity leave shortly after.

32.

Brooks returned from maternity leave in June 2023, and by end of July 2023, Jatunn Gibson, Agency Director, informed Estevez that she would now be reporting under Brooks.

33.

Estevez's supervisors also informed her that it would be her job to train Brooks about Board of Elections work.

*Estevez is Discriminated Against*

34.

Estevez was the only Hispanic employee and only employee from Paraguay who reported to Brooks.

35.

Estevez's prior manager, Kara Pringle, used to mock Estevez's accent.

36.

Despite 9 years of experience at the Board of Elections, documented expertise, and history of exceptional performance, including in the first half of 2023, Brooks began bullying Estevez and overly critiquing much of Estevez's work upon assuming supervision of Estevez.

37.

In addition, Brooks would closely monitor Estevez's working time and paid time off, despite the historical positive evaluations noting Estevez's punctuality and work ethic.

38.

In July 2023, Estevez suffered from anxiety directly stemming from Brooks's treatment of her.

39.

In addition to other anxiety symptoms, Estevez was having difficulty swallowing food when her anxiety flared up.

40.

In July 2023, Estevez took a single day of sick leave to address her anxiety.

41.

After a single day of sick leave, Brooks presented Estevez with FMLA paperwork and demanded that Estevez get her doctor to sign it.

42.

Estevez did not seek or need FMLA leave for a single sick day.

43.

Brooks threatened Estevez that her performance evaluation would be negatively impacted unless she applied for FMLA leave and insisted on a Friday that Estevez get the FMLA paperwork signed by her physician by 9:00 am on Tuesday.

44.

Other non-Hispanic employees from the United States were treated more favorably by Brooks and were not required to provide FMLA paperwork, even when those employees were out for 3 days or more.

45.

Brooks also routinely modified Estevez's time in Kronos, the County's timekeeping system, to the disadvantage of Estevez.

46.

Brooks did not do this for other employees, and Brooks actually granted favorable treatment, such as a holiday pay or clocking someone in for time they were not at work, to younger, non-Hispanic employees from the United States even when those employees were not eligible for holiday pay.

47.

On February 19, 2024, Estevez's supervisors notified Estevez that she was being terminated.

48.

While the first reason listed for Estevez's termination was that she engaged in protected activity, Estevez's supervisors added a number of pretextual ground in an attempt to justify the termination and listed other actions that allegedly supported the termination.

49.

Other non-Hispanic employees from the United States had engaged in similar or far more serious infractions than the alleged actions asserted against Estevez in her termination, yet those employees were not terminated, if disciplined at all.

_Claims of National Origin and Racial Discrimination Against the County_

50.

Title VII forbids taking adverse action against an employee that is motivated by the employee's national origin and/or race.

51.

Cobb County is an employer as defined by Title VII, 42 U.S.C. § 2000e(b).

52.

Estevez was in a protected class based on her national origin from Paraguay and Hispanic race.

53.

Estevez had vast experience as at the Board of Elections, had received exemplary reviews during her annual evaluations, and was qualified to continue in her Fiscal Tech III role for the Board of Elections.

54.

Estevez was subjected to disparate treatment by Brooks that other peers outside of her protected class were not subjected to by Brooks.

55.

Estevez's supervisor(s) decision to discriminatorily terminate Estevez was motivated by Estevez's race and national origin in violation of Title VII.

56.

The County's unlawful conduct caused Estevez to suffer economic and non-economic damages, including, but not limited to, lost earnings and benefits, lost opportunities for advancement, pain and suffering, and mental and emotional distress, for which the County is liable.

## COUNT II – UNLAWFUL RETALIATION IN VIOLATION OF TITLE VII

57.

Plaintiff incorporates paragraph 1 - 22 by reference as if fully restated herein.

*Documented History of Protected Activity and Escalating Retaliation*

58.

After Brooks began targeting Estevez beginning in July 2023, Estevez was concerned about the underlying reasons that she was being targeted after 9 exemplary years with the Board of Elections.

59.

Estevez went to Dr. Jatunn Gibson, Public Services Director, who was also serving as the interim director of the Board of Elections after the former Board of Elections Director retired in May 2023, about her concerns.

60.

In a meeting in July 2023 with Dr. Gibson, Brooks, and HR representative Melanie Crew (who joined by phone), Estevez expressed concerns that Brooks treatment towards her was due to her national origin, race, and age.

61.

The County did not take any further action related to Estevez's concerns and complaints.

62.

Thereafter, Brooks treatment of Estevez escalated in a retaliatory fashion.

63.

In August 2023, Estevez went to the new interim director for the Board of Elections, Gerry Miller, and raised concerns about ongoing discriminatory treatment by Brooks.

64.

On or around August 25, 2023, Miller held a meeting between himself, Brooks, and Estevez to "clear the air," but again, no formal investigation or actions were taken by the County.

65.

Evidencing her retaliatory efforts, Brooks later claimed the August 25, 2023 meeting was a verbal warning disciplinary meeting against Estevez.

66.

Neither Miller nor Brooks mentioned a verbal warning or any type of discipline to Estevez during the "clear the air" August 25, 2023 meeting.

67.

Brooks claimed the August 25, 2023 meeting was a verbal warning retroactively in an attempt to support the County's progressive discipline policies and to justify retaliatory written warnings and ultimate termination of Estevez.

68.

After no action or investigation was taken after raising concerns of national origin, racial, and age discrimination to her supervisors, Estevez went to Jim Harner in the County's Central HR Department on October 20, 2023, to report her concerns of discrimination.

69.

Estevez took a colleague with her to Harner's office, reported concerns about her treatment by Brooks, and stated that the only reason she could fathom why Brooks was mistreating her was due to her national origin, race, and/or age.

70.

Just 6 days later, on October 26, 2023, Brooks issued a written reprimand to Estevez.

71.

In the written reprimand, Brooks chastised Estevez for escalating her concerns of discrimination to Interim Director Miller.

72.

On November 6, 2023, Estevez emailed Harner and raised concerns about her inability to defend herself against retaliatory acts by Brooks.

73.

In her email, Estevez revealed that interacting with Brooks raised her anxiety so high that she was forced to swallow her own vomit during the written reprimand meeting with Brooks.

74.

Estevez also reported that Brooks claimed that she did not get the prior supervisor promotion because it was given to another employee due to the color of her skin, as well as noting discriminatory comments about the age of the Board of Elections workforce.

75.

Still, the County did not perform any formal investigation, did not interview other witnesses who Brooks made the same statement to, and did not take any corrective actions related to the discriminatory and retaliatory treatment of Brooks against Estevez.

76.

On November 10, 2023, Estevez contacted the EEOC and filed an inquiry to schedule an interview.

77.

In November 2023, Brooks told Estevez that the County was not moving forward with her former director's plan to reclassify her position.

78.

The decision to not reclassify Estevez's position was done in retaliation for her complaints of discrimination.

79.

As further retaliatory acts against Estevez, Brooks methodically reassigned Estevez's job duties to other employees.

80.

In January 2024, Estevez contacted Brooks' former supervisor, Lakeya Keys, a department HR Supervisor who Brooks said only got promoted due to the color of her skin, about her own concerns of discrimination by Brooks since Central HR had done nothing.

81.

On January 29, 2024, Keys emailed Michael Register, the Director of the Cobb County Department of Public Safety. A copy of Lakeya Keys January 29, 2024 email is attached as **Exhibit 1**.

82.

Notably, Keys wrote that she informed a prior director that another employee, Felicia Reed, previously reported that Brooks told numerous employees that Keys only got her supervisor position because she was black.

83.

Keys noted 3 employees who knew Brooks has made similar statements to but pointed out that no action was taken.

84.

Within the January 29, 2024 email, Keys wrote as follows:

Fast forward to the beginning of this year (2024), I received an emailed from an employee of Elections (Norma). I have never met this individual, nor have I contacted her for anything work/personal related. When I called her, she was in shambles. <u>She expressed to me that she felt like she was being discriminated against by her new boss-Karlie Brooks</u>. She explained to me that when Karlie started with Elections, she said something to Norma that upset her. She stated that Karlie told her that I got my job because I was black.

Ex. 1, January 29, 2024 Keys Email (emphasis added).

85.

Keys wrote that after the call with Estevez, she filed a complaint to the Employee Hotline.

86.

Keys then wrote that she was contacted by Melanie Crew from HR who stated "that Norma should have never contacted me to 'start this up again, because it happened so long ago.'" Ex. 1, January 29, 2024 Keys Email.

87.

Keys expressed frustration that no formal investigation was launched, no supervisors were informed, that the County failed her, and that the County was allowing Estevez to be subjected to the similar discriminatory actions by Brooks without taking action. *See* Ex. 1, January 29, 2024 Keys Email.

88.

Keys noted that she did not contact Jim Harner in HR "because I truly believe that [complaints] will fall on deaf ears." Ex. 1, January 29, 2024 Keys Email.

89.

Keys wrote that Estevez had already contacted Harner and that no action was taken.

90.

Keys wrote, "Norma calls me because she has fears of retaliation and feels like she cannot talk to Central HR. I am to the point where I feel as though an EEOC complaint needs to be lodged. Due to extreme mishandling, I believe a third-party [should be appointed] to handle this issue." Ex. 1, January 29, 2024 Keys Email.

91.

Keys concluded that "Cobb is not holding up it's [sic] environment of inclusivity." Ex. 1, January 29, 2024 Keys Email.

92.

Melanie Crew wrote in an email on January 9, 2024, referencing the hotline complaint by Keys and noting "her hotline complaint are [sic] not new comments."

A true and accurate copy of Melanie Crew's January 9, 2024 email to Jim Harner is attached as **Exhibit 2**.

93.

On January 9, 2024, Crew emailed Brooks about Estevez's concerns raised to Keys and falsely stated that Keys "indicated they realized it was a misunderstanding and that you in fact had not discussed the matter since it being addressed by Randy." A true and accurate copy of Melanie Crew's January 9, 2024 email to Karlie Brooks is attached as **Exhibit 3**.

94.

As shown in Keys January 29, 2024 email, Keys did not think it was a misunderstanding. *See* Ex. 1, January 29, 2024 Keys Email.

95.

Crews also wrote to Brooks on January 9, 2024, "I have made it clear to the individual who brought it up [Estevez] that her doing so was not helpful and only opened old wounds, which is inappropriate. I advised that going forward should that behavior continue we will address accordingly." Ex. 3, Crews to Brooks January 9, 2024 Email (emphasis added).

96.

On January 17, 2024, Brooks issued Estevez her first ever negative evaluation, rating her 2.7 out of 5.

97.

The negative evaluation was a further act of retaliation for Estevez's escalating concerns and complaints of national origin, race, and age discrimination.

98.

On February 5, 2024, Estevez again emailed Harner in HR to raise ongoing concerns and to address the lack of any investigation or response.

99.

On February 7, 2024, Estevez filed a charge of discrimination with the EEOC. A true and accurate copy of the February 7, 2024 EEOC Charge of Discrimination is attached as **Exhibit 4**.

100.

The EEOC emailed a copy of the perfected charge to Mr. Harner on the same day, February 7, 2024:

| Wed Feb 07 16:13:14 EST 2024 | Emailed Jim Harner at jim.harner@cobbcounty.org that charge has been perfected | DERICK NEWTON |
| --- | --- | --- |

101.

On February 12, 2024, Crew emailed Brooks, "As you are aware, a review was conducted regarding a complaint received in HR alleging that you have continued to make comments and/or reference to Lakeya Keys obtaining her position with DPS due to her race, despite previous corrective actions/discussions with by former Agency Director Randy Crider. We have found the allegation to be unsubstantiated and this complaint is now officially closed." A true and accurate copy of Melanie Crews February 12, 2024 email is attached as **Exhibit 5**.

102.

On February 19, 2024, the Board of Elections new Director, Tate Fall, and Brooks notified Estevez that she was being terminated on February 22, 2024, and issued a draft termination letter. A true and accurate copy of the termination letter is attached as **Exhibit 6**.

103.

Fall was approximately 29-years-old at the time, much closer to Brooks age, and a white female.

104.

Within the termination letter, Fall wrote, "you continue to make false accusations against your current supervisor …." Ex. 6, Termination Letter.

105.

There was never a finding that Estevez's accusations were false. To the contrary, the County never interviewed the multiple witnesses who also heard Brooks state that Keys only got her promotion because she was black or witnessed Brooks discriminatory acts against Estevez.

106.

There was also never any investigation performed about Estevez's concerns about her own discrimination that found Estevez's concerns to be false.

107.

Fall went on to write as follows:

> On or around Tuesday, January 9, 2024, a complaint was made stating that on Thursday, January 4, 2024, you contacted one of your supervisor's previous coworkers who is a current employee with DPS. You contacted her during business hours and proceeded to lodge an extremely serious accusation – that your supervisor told you she got passed over for a promotion and the selected candidate was chosen due solely to that individual's race. There is no evidence to support your accusation, and the investigation launched by Human Resources found this accusation to be unsubstantiated. Within your rebuttal, you allege that this individual contacted you, however, evidence shows that this is not the case and that you reached out to them regarding the accusation against your supervisor. Your behavior not only negatively affected the individual in question, but also seemed to occur for the sole reason of attempting to discredit and disparage your supervisor. This is unbecoming conduct of a county employee.

Ex. 6, Termination Letter.

108.

Also in the termination letter, the County further displayed the effort to chill Estevez's protected activity by affirming that she had previously instructed her 1) to only work through the chain of command that was discriminating against her rather than escalate her concerns and 2) to "not speak to coworkers in or outside of our department about individual's behaviors or actions." Ex. 6, Termination Letter.

109.

Under Title VII and EEOC guidance, employees are allowed to contact co-workers about complaints or concerns of discrimination—i.e. protected activity—without fear of retaliation.

110.

Thus, the County expressly acknowledged in the termination letter that Estevez was being terminated for engaging in protected activity.

111.

Notably, the "unsubstantiated" statement made by Brooks was made to numerous other individuals, as reported by Keys, but instead of disciplining the white employee who made the abhorrent statement to Estevez, the Hispanic employee from Paraguay was terminated for raising her own concerns of

discrimination and for raising concerns about the discriminatory comments Brooks made to her.

112.

Mr. Harner is copied on the termination letter, who was notified by the EEOC about the EEOC charge of discrimination being filed on February 7, 2024.

*The County Blocks Estevez from Re-Hire at Another Department*

113.

After her termination, an employee at another department in the County recruited Estevez to apply for a position she was qualified for in that department.

114.

Estevez submitted her application and was selected for an interview.

115.

After interviewing, the job posting was suddenly canceled, and Estevez's colleague told her that there was a directive to terminate the recruitment.

116.

A job that was functionally the same was posted just weeks later, but Estevez was not selected for an interview this time.

117.

Upon information and belief, the County directed the hiring manager to terminate the recruitment of that position in order to prevent the re-hire of Estevez in the County.

118.

Upon information and belief, Estevez has been placed on a formal or informal do-not-hire list, or equivalent non-re-hire list.

119.

Placing Estevez on a non-re-hire list was a further act of retaliation for Estevez engaging in protected activity.

*Estevez was Retaliated Against in Violation of Title VII*

120.

The County is an employer as defined by Title VII, 42 U.S.C. § 2000e(b).

121.

Title VII also forbids retaliation against an employee who opposes unlawful employment discrimination or participates in a protected activity under Title VII.

122.

Estevez opposed the unlawful discrimination she was subjected to and engaged in protected activity through the following acts:

- Raising internal complaints of national origin and racial discrimination;

- Filing a formal complaint of national origin and racial discrimination and retaliation internally with HR;

- Contacting other County employees to discuss and raise concerns of national origin and racial discrimination and retaliation; and

- Filing a charge of discrimination with the EEOC.

123.

Estevez also engaged in protected activity by contacting other employees about concerns of discriminatory comments made by her supervisors.

124.

Crew in HR expressed frustration, both in emails and verbally, that Estevez contacted other employees about discriminatory comments Brooks made to her and stated the County would address Estevez's conduct accordingly.

125.

Brooks and the County retaliated against Estevez by disciplining her for raising concerns of discrimination, issuing her first ever negative review, directing her not to raise complaints of discrimination outside of her chain of command, and ultimately terminating her.

126.

The County's actions were and are intentional and intended to chill Estevez's exercise of her federally protected rights.

127.

The County expressly wrote in Estevez's termination letter that she was being terminated for contacting another employee about concerns of discrimination.

128.

The County was also notified that Estevez filed a charge on discrimination on February 7, 2024, just 12 days before the County notified Estevez of her termination.

129.

The County's unlawful retaliation caused Estevez to suffer lost wages and benefits, mental and emotional distress, pain and suffering, costs and attorneys' fees, and other damages for which the County is liable under Title VII.

## Count III:  Unlawful Discrimination in Violation of the ADEA

130.

Plaintiff incorporates paragraph 1 - 22 by reference as if fully restated herein.

131.

Estevez was over the age of forty (40) at all times relevant to this Complaint and was fifty-seven (57)-years-old at the time of her unlawful and discriminatory termination.

132.

Brooks is substantially younger than Estevez and believed to be in her late 30s.

133.

Brooks publicly displayed discriminatory animus based on age on Facebook prior to joining the Board of Elections and becoming Estevez's supervisor:



134.

Thus, Brooks publicly expressed concerns with training and supervising aging employees close to or already at social security age.

135.

Brooks also expressed ageist statements and actions towards Estevez and other older employees, telling former Director Janine Eveler that the workforce was too old and that they needed to hire younger workers.

136.

In a similar fashion, Brooks also targeted, criticized, and pushed out a 70-year-old African American female, Jeanette Collins, who resigned after feeling there was no choice but to quit.

137.

The County is an employer covered by the ADEA, 29 U.S.C. § 621, *et seq*.

138.

It is unlawful to discriminate against aging employees over 40 years old on the basis of age.

139.

Estevez was in a protected age category under the ADEA based on her age.

140.

Estevez was qualified and capable of performing her position, as evidenced by 9 years of exemplary evaluations until Brooks became her supervisor, including in the first half of the year before Brooks became her supervisor.

141.

Brooks intentionally and maliciously targeted Estevez based on her age until she ultimately accomplished her goal of terminating Estevez.

142.

Brooks overly criticized Estevez's work, modified Estevez's time in Kronos, directed Estevez to obtain FMLA paperwork, removed Estevez's job duties and assigned those to younger employees, disciplined, and ultimately terminated Estevez due to her age, whereas Brooks did not take these same actions with Estevez's younger colleagues.

143.

Brooks methodically gave Estevez's job duties away to younger employees prior to terminating Estevez.

144.

Brooks and the County terminated Estevez due to her age.

145.

The County's unlawful actions caused Plaintiff to suffer lost income and benefits, lost opportunities for advancement, lost retirement benefits, costs and attorneys' fees, and other damages for which the County is liable.

146.

The County's conduct alleged in this Complaint is a willful and intentional violation of the ADEA, which entitles the Plaintiff to liquidated damages.

**Count IV:  Unlawful Retaliation in Violation of the ADEA**

147.

Plaintiff incorporates paragraph 1 - 22 by reference as if fully restated herein.

148.

After being subjected to different treatment by Brooks, Estevez raised complaints and concerns of age discrimination to numerous supervisors.

149.

After no actions were taken to investigate her concerns, Estevez filed a formal complaint of discrimination with HR for the County.

150.

After being subjected to continued discriminatory and retaliatory acts by Brooks and the County, Estevez contacted another employee, Keys, in Cobb County about concerns of national origin, racial, and age discrimination and retaliation.

151.

Keys complained to the County about discriminatory acts by Brooks and noted Estevez's concerns of discrimination and retaliation.

152.

Still, no real investigation was done other than an alleged cursory review.

153.

After facing continued attacks, Estevez filed a charge of discrimination on February 7, 2024, and, in part, asserted complaints of age discrimination and retaliation.

154.

The EEOC notified Harner of the EEOC charge on the same day, February 7, 2024.

155.

Just 12 days later, on February 19, 2024, the County notified Estevez that she was being terminated, and Harner is copied on the termination letter.

156.

Within the termination letter, the County wrote that Estevez was being terminated for engaging in protected activity of raising concerns of discrimination to another County employee.

157.

Like Title VII, it is unlawful for employers to retaliate against employees for engaging in protected activity.

158.

The County unlawfully terminated Estevez and retaliated against her for raising concerns of age discrimination prohibited by the ADEA, in violation of the ADEA, 29 U.S.C. § 623(d).

159.

The County then terminated a job posting that Estevez was interviewing for to prevent Estevez from being hired in further retaliation for her protected activities.

160.

The County's unlawful actions caused Estevez to suffer lost income and benefits, lost opportunities for advancement, lost retirement benefits, costs and attorneys' fees, and other damages for which the County is liable.

161.

The County's violations of the ADEA were willful, and Estevez seeks liquidated damages for each violation.

## Count V:  Violations of the FLSA

162.

Plaintiff incorporates paragraph 1 - 22 by reference as if fully restated herein.

163.

Estevez was an hourly employee.

164.

The County was an employer under the FLSA.

165.

Estevez did not supervise 2 or more employees.

166.

Estevez did not have the ability to hire or fire employees for the County.

167.

Estevez did not have the ability to exercise independent discretion and authority for matters of significance on behalf of the County.

168.

Estevez was a non-exempt employee who was entitled to overtime wages for all hours worked over 40 hours per week.

169.

The County was aware that Estevez regularly worked more than 40 hours a week, even noting in one of her evaluations, "Norma has consistently shown commitment to her job by coming in early, staying late, and working on her days off to ensure critical deadlines are met even if the tasks are not her responsibility."

170.

Estevez also rarely took a full 30-minute lunch breach during her tenure, yet she was forced to clock out for lunch.

171.

Estevez often worked off the clock an additional 5 to 20 hours of overtime during election weeks.

172.

The County suffered or permitted Estevez's off-the-clock overtime work.

173.

Defendants were aware that Plaintiffs were entitled to be paid 1.5 times their regular rate for every hour they worked over 40 per week.

174.

Estevez's supervisors told her that she was non-exempt and should not report her overtime hours due to the increased costs that would cause on payroll and the Board of Elections.

175.

However, other Fiscal Techs were allowed to record overtime and were paid overtime wages.

176.

Defendant did not pay Estevez 1.5 times her regular rate for all overtime hours she was required to worked off-the-clock over 40 hours per week.

177.

Defendant willfully failed to pay Plaintiff at 1.5 times her regular rate of pay for all hours worked over 40 per week.

178.

Defendant failed to maintain accurate records of Plaintiffs hours worked in violation of the FLSA.

179.

Defendant is liable for its failure to pay Estevez overtime under the FLSA.

180.

Defendant's failure to pay overtime wages in violation of the FLSA damaged Plaintiff in an amount to be proven at trial.

181.

Plaintiff is entitled to unpaid overtime wages, liquidated damages, and attorneys' fees and expenses in accordance with 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1.    Find that Defendant violated Title VII by discriminating and retaliating against Plaintiff;

2.    Find that Defendant violated the ADEA by discriminating and retaliating against Plaintiff;

3.    Order Defendants to make Plaintiff whole by reinstatement to her former position, with full back pay and other benefits and expenses in amounts to be proven at trial;

4.    If reinstatement is not feasible under the circumstances, grant Plaintiff front pay, including lost future wages and retirement benefits;

5.    Grant Plaintiff compensatory damages under Title VII for pain and suffering and mental and emotional distress in an amount determined by the enlightened conscience of a jury;

6.    Grant Plaintiff liquidated damages in an amount equal to her economic damages under the ADEA;

7.    Award Plaintiff all back-owed overtime wages under the FLSA for the 3-year period prior to filing this lawsuit;

8.    Award Plaintiff liquidated damages equal to all back-owed overtime wages under the FLSA for the 3-year period prior to filing this lawsuit;

9.    Award Plaintiff pre- and post-judgment interest at the maximum rates allowable by law;

10.    Grant Plaintiff special damages for all out-of-pocket costs and expenses that she would not have incurred but for Defendant's unlawful conduct, including costs incurred in bringing this action and reasonable attorneys'

fees; and

11.    Grant such additional relief as this Court deems necessary, appropriate, proper, or just.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all issues so triable.

Respectfully submitted this 21st day of October 2024.

*/s/ J. Daniel Cole*
**J. Daniel Cole**
Georgia Bar No. 450675
dcole@pcwlawfirm.com
**James Dean**
Georgia Bar No. 696656
jdean@pcwlawfirm.com

**PARKS, CHESIN & WALBERT, P.C.**
1355 Peachtree Street NE, Suite 2000
Atlanta, GA 30309
Telephone: 404-873-8000
Fax: 404-873-8050

*Counsel for Plaintiff*

**Exhibit 1**

**Register, Michael**

| | |
|---|---|
| **From:** | Keys, Lakeya |
| **Sent:** | Monday, January 29, 2024 11:58 PM |
| **To:** | Register, Michael |
| **Subject:** | Mishandling of an HR Issue |

Good evening,

Sir, it's taken me quite some time to put *pen to paper* regarding an issue that has come up again and a possible mishandling of this issue then and now.

When I was selected for the position of HR Supervisor, I took it very seriously. I knew I had some big shoes to fill and I knew the reputation that DPS Admin office held. Assuming the role was an issue from that start. This was because my direct reports were competing for the same role. The first 90 days in this role made me want to quit. Constant harassment and bullying from my direct reports, no support from my Chain of Command, was definitely taking a toll on me. Director Crider called a "Courageous Conversation," to get everything out in the open. That's when I informed him that it was brought to my attention (by Felicia Reed) that Karlie Brooks had mentioned to numerous people that I was only selected for the role because I was black.

Her microaggressions towards me finally made since. What was most disturbing is that Suzanne Pete, Felicia Reed, and Director Crider knew that these things were said. There was no record in Mrs. Brooks' file, mentioning this egregious behavior. Yet, I was still her supervisor and I kept it professional at all times. I even felt like I was forced to give her an exceeds on her 2021 performance evaluation after she complained to Suzanne Pete ( then Business Manager) that she was not happy with her rating. I asked her she was welcomed to submit a statement with her evaluation- she declined. Eventually, Karlie took a position with Elections, and I wished her well.

Fast forward to the beginning of this year (2024), I received an emailed from an employee of Elections (Norma). I have never met this individual, nor have I contacted her for anything work/personal related. When I called her, she was in shambles. She expressed to me that she felt like she was being discriminated against by her new boss- Karlie Brooks. She explained to me that when Karlie started with Elections, she said something to Norma that upset her. She stated that Karlie told her that I got my job because I was black.

At this point, I filed a complaint to the Employee Hotline. This hotline is advertised as a third-party, anonymous place to submit issues and possible violations of policy, fraud, waste, and abuse, and etc. I submitted a complaint regarding the things that were said by Mrs. Brooks. I was contacted the next day by Melanie Crew. Melanie stated that she would talk to Karlie and that Norma should have never contacted me to "start this up again, because it happened so long ago." This was very upsetting to me because I feel as though there is no statute of limitations when it comes to these types of nasty remarks. I was further plagued by the fact that Melanie said she would call Karlie and speak with her about this. No investigation was launched, no supervisors were informed of these issues- I felt, in that moment, Cobb failed to live up to it's standards of being an inclusive, no harassment workplace. I felt like Cobb failed me. I still feel this way, because nothing has been done. Karlie is continuing to make disparaging remarks and pushes microaggressions (that have been reported by Norma and according to her, have not been addressed.)

I have not brought these issues to Jim Harner because I truly believe that they will fall on deaf ears. Norma has reached out to him and has confirmed this in her case.  If Karlie was truly sorry about what was said, she would have never repeated it after going to Elections. She never apologized to me when she worked in DPS and it was brought up in the Courageous Conversation. This narrative Karlie keeps spewing, is affecting my reputation and standing within Cobb DPS. Many employees continued to reach out to her for HR issues, long after she was gone. To my knowledge, her continuous smear campaign regarding me, has never been addressed formally. I am disappointed and I truly feel like this has to be

addressed properly. I feel like Melanie Crew and Central HR mishandled this entire issue. Norma calls me because she has fears of retaliation and feels like she cannot talk to Central HR. I am to the point where I feel as though an EEOC complaint needs to be lodged. Due to extreme mishandling, I believe a third-party to handle this issue.

I already feel as though I have to work twice as hard to prove myself in this role, coupled with what she has been saying, Cobb is not holding up to it's environment of inclusivity. I'm available to discuss this issue any time. It just took a lot to get my thoughts together on this matter. I have dealt with this type of behavior from previous places of employment, and I have left due to no action being taken in these types of discriminatory actions.

Respectfully,



**Lakeya R. Keys**
**Dept. HR Supervisor**
Cobb County Department of Public Safety
100 Cherokee Street, Suite 460
Marietta, GA 30090-9682
Office: (770) 528-3805
lakeya.keys@cobbcounty.org

**COMMITMENT · SERVICE · PARTNERSHIP**

*Click the links for information on our departments*

   

**Exhibit 2**

**Harner, Jim**

| | |
|---|---|
| **From:** | Crew, Melanie |
| **Sent:** | Tuesday, January 9, 2024 8:30 AM |
| **To:** | Harner, Jim |
| **Subject:** | FW: Please Call |

FYI – I spoke with Norma this morning regarding her speaking with Lakeya. She clarified that the issue she brought to Lakeya's attention is the same issue we've already discussed with Karlie and that the comments Lakeya mentions in her hotline complaint are not new comments. Norma indicated she understood it didn't help the situation by involving Lakeya. I will speak with Lakeya today as well to ensure she is okay and to see if she has any further questions or concerns.

**Melanie Crew**
**Employee Relations & Compliance Specialist**
**Human Resources**
**Cobb County Government**
100 Cherokee Street, Suite 200, Marietta, GA 30090
Direct (770) 528-1188; Fax (770) 528-2590



## *How is HR Doing?*

For EEOC guidance on Covid 19 and the ADA go HERE.

**From:** Crew, Melanie <Melanie.Crew@cobbcounty.org>
**Sent:** Tuesday, January 9, 2024 8:12 AM
**To:** Estevez, Norma <Norma.Estevez@cobbcounty.org>
**Subject:** Please Call

Good morning, Norma.

Please give me a call when you are available.

Thank you,

**Melanie Crew**
**Employee Relations & Compliance Specialist**
**Human Resources**
**Cobb County Government**
100 Cherokee Street, Suite 200, Marietta, GA 30090
Direct (770) 528-1188; Fax (770) 528-2590



1

**Exhibit 3**

---

**Brooks, Karlie**

---

| | |
|---|---|
| From: | Crew, Melanie |
| Sent: | Tuesday, January 9, 2024 10:17 AM |
| To: | Brooks, Karlie |
| Subject: | HR Discussion Follow-Up |

Good morning, Karlie.

Per our discussion this morning regarding a previous incident that had already been addressed, please ensure if any DPS employees contact you for guidance on DPS matters that you reroute those individuals to DPS personnel to be handled. You made it clear that there have been no ongoing discussions regarding the previous matter and that should the issue be brought up again to anyone within Cobb County that that could be an issue that will need to be addressed. You asked that I reach out to the individual to make it clear that no new incidents have occurred and that you are sorry it has come up again. I have reached out to them and advised as such. They indicated they realized it was a misunderstanding and that you in fact had not discussed the matter since it being addressed by Randy. In addition I have made it clear to the individual who brought it up that her doing so was not helpful and only opened up old wounds, which is inappropriate. I advised that going forward should that behavior continue we will address accordingly.

Should you have any questions/concerns in the future, please do not hesitate to contact me.

Thank you,

**Melanie Crew**
**Employee Relations & Compliance Specialist**
**Human Resources**
**Cobb County Government**
100 Cherokee Street, Suite 200, Marietta, GA 30090
Direct (770) 528-1188; Fax (770) 528-2590



## _How is HR Doing?_

For EEOC guidance on Covid 19 and the ADA go HERE.

**Exhibit 4**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | EEOC | **410-2024-01901** |
| | | and EEOC |

*State or local Agency, if any*

| I Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)* | Home Phone | Year of Birth |
|---|---|---|
| Ms. Norma Estevez | 678-983-2601 | 1966 |

| Street Address |
|---|
| 350 Nottingham Dr |
| MARIETTA, GA 30066 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| Cobb County Elections & Registration | 501+ Employees | |

| Street Address |
|---|
| 995 ROSWELL ST NE |
| MARIETTA, GA 30060 |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest: 07/31/2022    Latest: 02/07/2023 |
| Age, National Origin, Retaliation | |
| | Continuing Action |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

   I. I was hired by the above-named employer in May 2014, as a Fiscal Tech II. I am currently employed as a Fiscal Tech III. Since employed, I have always had a positive experience. At the end of July 2022, Karlie Brooks (mid 30s, Caucasian) was hired as the Admin Supervisor, and I was asked to train her. Ms. Brooks refused to speak to me and often ignored me. In July 2023, when Ms. Brooks returned from maternity leave, she immediately removed my credentials, which I needed to perform my job duties. Ms. Brooks would make comments about the workforce being "too old" and expressed how they needed to hire younger people. I made several protectant complaints to human resources most recently in January 2024, and no remedial action has been taken. I have been subjected to baseless write ups and an unfavorable performance review following my complaints. The harassment continues and has caused a hostile work environment.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Ms. Norma Estevez** **02/07/2024** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Charging Party Signature* | |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | **410-2024-01901** |
| | | and EEOC |

*State or local Agency, if any*

II. No reason was given for the harassing treatment. I was told that I was written up for alleged no call no call, not following the chain of command and for asking other members of management to reinstate my credentials over my supervisor which is untrue. I was told that I received an unfavorable job performance due to an alleged vendor complaint that I was never previously made aware of.

III. I believe that I have been discriminated against because of my age (57), in violation of the Age Discrimination in Employment Act of 1967, as amended (ADEA), and my National Origin (Hispanic), in violation of Title VII of the Civil Rights Act of 1964 as amended (Title VII), and subjected to retaliation for engaging in protected activity, in violation of the ADEA and Title VII.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Ms. Norma Estevez** **02/07/2024** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |
| *Charging Party Signature* | |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:**  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.**  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.**  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**Exhibit 5**

**Harner, Jim**

| | |
|---|---|
| **From:** | Crew, Melanie |
| **Sent:** | Monday, February 12, 2024 3:55 PM |
| **To:** | Brooks, Karlie |
| **Subject:** | HR Complaint Follow-Up |
| **Attachments:** | No Harassment and No Discrimination Policy 8-2023.pdf |

Good afternoon, Karlie.

As you are aware, a review was conducted regarding a complaint received in HR alleging that you have continued to make comments and/or reference to Lakeya Keys obtaining her position with DPS due to her race, despite previous corrective actions/discussions with by former Agency Director Randy Crider. We have found the allegation to be unsubstantiated and this complaint is now officially closed. However, please be advised that should there be any future incidents involving you making comments and/or reference to  Ms. Keys obtaining her position because of her race (or any similar comments referencing any other employee), this will be deemed a violation of policy and action will be taken. As previously instructed, should you be contacted by any DPS personnel seeking assistance regarding DPS matters, please ensure you direct them back to DPS for assistance.

As you are aware, the County has a zero tolerance policy and therefore, you are being instructed to refrain from making any comments of this nature about Ms. Keys or any other Cobb County employee, in the future.

Should you have any questions or concerns relating this directive, please do not hesitate to contact me.

Thank you,

**Melanie Crew**
**Employee Relations & Compliance Specialist**
**Human Resources**
**Cobb County Government**
100 Cherokee Street, Suite 200, Marietta, GA 30090
Direct (770) 528-1188; Fax (770) 528-2590



*How is HR Doing?*

For EEOC guidance on Covid 19 and the ADA go HERE.

1

**Exhibit 6**



Cobb County
**Board of Elections & Registration**                    Tate Fall *Director*

995 Roswell Street NE        (770) 528-2300
Mail: P.O. BOX 649          (770) 528-2519 Fax
Marietta, Georgia 30061

2/24/2024

Ms. Norma Estevez
350 Nottingham Drive
Marietta, GA 30066

RE: Termination

Dear Ms. Estevez:

This is to advise you that I am terminating your employment with the Elections and Registration Department effective at 5 p.m. February 22, 2024. The cause for your termination is set forth below.

You have demonstrated a pattern of inappropriate behavior during my short tenure that mirrors behavior which, according to email evidence, you have exhibited going back to 2017. Specifically, you continue to make false accusations against your current supervisor, attempting to tarnish her professional reputation, just as you have done to your previous supervisors and your fellow co-workers, and have demonstrated several instances of insubordinate behavior. Despite several attempts to address your behavior and assist you in improving going forward, you have failed to do so.

On or around Tuesday, January 9, 2024, a complaint was made stating that on Thursday, January 4, 2024, you contacted one of your supervisor's previous coworkers who is a current employee with DPS. You contacted her during business hours and proceeded to lodge an extremely serious accusation – that your supervisor told you she got passed over for a promotion and the selected candidate was chosen due solely to that individual's race. There is no evidence to support your accusation, and the investigation launched by Human Resources found this accusation to be unsubstantiated. Within your rebuttal, you allege that this individual contacted you, however, evidence shows that this is not the case and that you reached out to them regarding the accusation against your supervisor. Your behavior not only negatively affected the individual in question, but also seemed to occur for the sole reason of attempting to discredit and disparage your supervisor. This is unbecoming conduct of a county employee.

On Wednesday, January 17, 2024, your supervisor and I met with you to discuss your performance evaluation. During this meeting, we discussed complaints that were raised by two vendors, Dominion and Quadient, to the Interim Director, Gerry Miller. Both vendors stated that you were rude and difficult to work with and it was confirmed to me, in writing, that while a Dominion Representative was visiting for the November 2023 election, they raised the issue to Gerry that "Norma was difficult to work with," and that this representative was "receiving push back from her." Additionally, a representative from Quadient complained to Gerry over the phone that, "Norma was being difficult to work with in regards to maintenance contracts on the Quadient equipment." Your initial response to these complaints was that you were not aware that any complaint had been made by either vendor. You failed to take accountability for the complaint, and instead, on January 18, 2024, you contacted both vendors to inquire about these complaints and subsequently gave me the emails you sent to them where you wrote at the top that "I had to contact the vendor to ask why I was accused of being rude." Your decision to confront

the vendors had a negative impact on our relationship with them and had the potential to bring discredit to the County and its reputation. Your actions were unprofessional and unbecoming conduct of a county employee.

On January 29, 2024, Dr. Jatunn Gibson, Public Services Agency Director, and I met with you to discuss your ongoing insubordinate and inappropriate behavior. During this meeting, four basic behavior expectations were laid out for you, as outlined below. It was explained to you verbally and in writing that, "Defying any of these expectations will result in disciplinary action up to dismissal."

- Treat everyone with respect.
- Work through your chain of command.
  - If you have an issue with Karlie, talk through it with her first.
  - If issues persist, come directly to me.
- Do not speak to coworkers in or outside of our department about individual's behaviors or actions. If you have an issue, come directly to me.
- Focus on your duties as laid out in your job description and do not get involved in issues outside of that scope.

By Friday, February 2, 2024, despite the expectations given not even a week earlier, you failed to work through your chain of command when you went directly to Dr. Gibson to bring up previously stated and unsubstantiated complaints about your supervisor. Your blatant disregard for the expectation given is insubordination and will not be tolerated.

On Tuesday, February 6, 2024, I held a meeting with you, Dr. Gibson, your supervisor, and Human Resources Deputy Director Glenda Valentine, who attended per your request. You requested this meeting to discuss your job expectations and duties. I sent an email on Wednesday, February 7, 2024, recapping the meeting and reiterated the four basic behavior expectations you were previously given and again stated that, "Defying any of these expectations will result in disciplinary action up to dismissal." However, on February 8, 2024, you again displayed insubordinate behavior when you replied stating that "After the appraisal performance meeting, I do not feel comfortable to approach Karlie or Tate." I replied stating I'm not sure how we can proceed if you do not feel comfortable to approach myself or your direct supervisor, and I again restated the four behavior expectations concluding with, "Defying any of these expectations will result in disciplinary action up to dismissal." You then replied, "I do not feel comfortable bringing behavior issues to you pertaining Karlie." You concluded the email by saying, "I will not be sending or replying emails concerning all this." Instead of taking accountability and accepting the expectations given in order to move forward, you refused to communicate with your supervisor or myself, which constitutes insubordination.

On Tuesday, February 13, 2024, while I was attending the BOC meeting, you failed to follow the first action item that was identified at our February 6, 2024, meeting. This action item was, "Karlie, Norma, and Jacqueline (Brown) will set aside time each week to meet and Norma will train both Karlie and Jacqueline on her tasks." You refused to attend the 9:10 am training session that was scheduled because your supervisor would be attending, forcing her to leave Jacqueline's office so that you would meet with Jacqueline to conduct training. Subsequently, at your 10:00 am Fiscal Tech team meeting with Jacqueline and your supervisor, you were extremely disrespectful and combative about every request that your supervisor made of you. Specifically, you would not commit to a weekly training schedule with Jacqueline, as previously laid out as an action item. Instead, you said that you would get a training together by the end of this month or next month. You also became defensive and reiterated that you are extremely busy but that there is not enough work for two fiscal techs and that you never asked for an additional position. When your supervisor brought up the idea of creating a desk reference guide for your day-to-

day tasks, you refused because you claimed that no one had trained you for this job and that you knew what to do because you went to school for this. Your ongoing failure to comply with my directive constitutes both insubordination and unbecoming conduct of a county employee.

Your actions violated the following portions of the Conduct and Performance Policy: section 4.B. states that, "An employee will be considered to have engaged in unbecoming conduct for actions that…tend to impair the operation or efficiency of the County or its employees. Such conduct or actions are prohibited whether presented in writing, verbally, physically, or electronically." Section 4.J. states that, "Employees are expected to be courteous to the public and employees. In demonstrating courtesy, employees are expected to be tactful, to control their tempers, and to exercise patience and discretion." Section 4.L. states that, "Employees are expected to comply with directions and/or any lawful order of a supervisor or member of management." Based on your clear violations of the County's Conduct and Performance policy, I believe good cause exists to propose your termination from employment.

Despite prior attempts to redirect you and provide clear direction as to your workplace expectations, you have elected to disregard those instructions. As a result, your behavior has not improved despite lesser discipline including a verbal counseling session, a verbal reprimand, a written reprimand, and your most recent performance appraisal. Specifically, on July 26, 2023, there was a meeting with your supervisor, Dr. Gibson, and Human Resources Employee Relations & Compliance Specialist Melanie Crew (Melanie attended virtually). During this meeting, it was made clear to you that supervisor directives are to be followed even if you don't like them. Then, on August 25, 2023, in a meeting with your supervisor and Gerry Miller, you were issued a verbal warning for multiple policy violations including disrespectful emails to your supervisor. Next, on October 26, 2023, your supervisor, and Gerry Miller gave you a written reprimand for unprofessional conduct and insubordination. Additionally, on Wednesday, January 17, 2024, your supervisor and I met with you to discuss your performance appraisal which identified multiple incidents of insubordination and unbecoming conduct. Examples of insubordination identified in the performance appraisal include but are not limited to becoming argumentative when you disagree with feedback that is being provided to you by your superior, going around your supervisor and chain of command when you disagree with a decision that has been made, and becoming defensive when asked to share your job duties with your fellow team members. Examples of unbecoming conduct identified in the performance appraisal include but are not limited to two instances of you telling new employees about an incident in a Division Manager's past that was investigated and found not to be true, rude behavior to internal and external vendors to the point where complaints were made to the Interim Director and spreading rumors with a seasonal employee about a different seasonal employee through the Registration Department.

On February 21, 2024, you submitted your response to the termination proposal to me via email. Within your rebuttal, you denied all issues mentioned within the termination proposal letter and refused to take any accountability for any of your actions, while continuing to put the blame on everyone else. Based on these ongoing issues, and your failure to accept responsibility, I believe good cause exists to terminate your employment.

When deciding to terminate your employment, I considered the nature and seriousness of your actions and the impact they have on our organization. Specifically, your continuing disrespectful, unprofessional, and oppositional behavior and the tremendous amount of time we are forced to expend to address your conduct severely impairs the Administrative Division's ability to function effectively. Further, your unprofessional and disrespectful conduct creates a negative environment for all members of the team. In addition, your willful refusal to cross-train fellow team members to ensure others are able to complete your job functions in your absence impairs our ability to accomplish our mission. As a result, I find that your misconduct has a serious and negative impact on the organization and that it is clear the Elections Department cannot continue to function in this way.

You may appeal this action to the Civil Service Board within ten (10) calendar days.

Sincerely,


Tate Fall, Director of Elections

Cc:    Dr. Jatunn Gibson, Public Services Agency Director
       Human Resources